UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

RICKEY AND SHIRLEY SERIGNE                                    CIVIL ACTION

VERSUS                                                                          NO. 06-5861

COX OPERATING, L.L.C., ET AL                                SECTION "K" (2)

<u>ORDER AND REASONS</u>

Before the Court is a Motion for Summary Judgment filed by Cox Operating LLC. Rec. Doc. 19. The Motion is opposed. Rec. Docs. 23, 29. For the following reasons, the Motion is **denied.**

I.       **BACKGROUND**

On April 14, 2004, Cox Operating, L.L.C, as a working interest owner and operator of certain oil and gas wells, entered into a Contract Operating Agreement ("COA") with Brammer Engineering, Inc., designating Brammer to act for and on its behalf as its contract operator. The COA provides that Brammer shall assume and perform thirty-seven responsibilities and obligations listed under the section of the agreement entitled "Operations & Production." Moreover, the contract provides that actions by Brammer "be to such extent and as fully as though Brammer itself has been designated as Operator of each such well."

On August 27, 2005, Rickey Serigne was navigating his fishing vessel, the MISS HEIDI, in Quarantine Bay off the Louisiana coast when his vessel allegedly allided with an unlit "Christmas Tree" wellhead. The allision allegedly caused the MISS HEIDI to take on water. Serigne grounded the vessel and placed temporary patch in order to get back to shore. Serigne arrived at Delacroix Island in the afternoon of August 27, 2005.

Rickey Serigne and his wife Shirley, filed this action in the 25th Judicial District Court, Parish of Plaquemines, alleging that Cox, Brammer, and their respective insurers, are liable for their

negligence in failing to place lights on the wellhead and failing to remedy a dangerous situation. Further, plaintiffs allege Cox, the supposed owner, and/or Brammer, the alleged contract operator, knew or should have known that this well did not have properly operating lights.   In addition to damages sustained to the vessel, Rickey Serigne claims he sustained neck and back injuries.  He seeks damages for pain and suffering, mental anguish, residual physical and mental impairment, disability, loss wages, and loss of enjoyment of life.  Shirley Serigne seeks damages for loss of consortium, love and affection, financial and emotional support, and services and companionship. Plaintiffs' state court petition alleged jurisdiction under the "savings to suitors" clause.  28 U.S.C. § 1333.

The matter was removed to this Court on September 11, 2006, by Brammer.[1]  Thereafter, Cox and Brammer simultaneously filed motions for summary judgment. Rec. Docs. 18, 19.  In the current motion before the Court, Cox argues summary judgment should be granted because: (1) it did not owe any duty to Serigne to maintain any navigational lighting as such duty had been delegated to Brammer under the COA; (2) that Cox is not vicariously liable for the any negligent acts of Brammer because the undisputed facts show that Brammer was Cox's independent contractor and Cox had no control over the day to day operations of Brammer; and (3) Cox cannot be strictly liable because the undisputed facts show that it had no direction or control over the navigational lighting and the evidence does not show that it had any actual knowledge of any ruin, vice or defect in the navigational lighting system.

Brammer counters that Cox had a statutory duty, as the alleged owner of a fixed structure

---

[1]The Court notes that this action was improperly removed under the "savings to suitors" clause.  However, plaintiffs have waived any right to remand and jurisdiction is proper.  See *Baris v. Sulpicio Lines, Inc.*, 932 F. 2d 1540, 1543-45 (5th Cir. 1991).

erected in navigable waters of the United States, to light and maintain the lights on the structure. Further, Brammer asserts that none of the thirty-seven items delegated to Brammer under the COA designate any specific obligation on its part to light or otherwise maintain the lighting on the wellhead.  Alternatively, Brammer argues that even if the agreement does so delegate or shift the obligation to Brammer, such transfer of the maintenance and responsibility of the wellhead lighting was not made in compliance with the requirements of federal law and therefore, is not effective. Finally, Brammer submits that it performed all of its obligations under the COA.

The Serignes argue that the Court cannot ascertain whether Cox or Brammer was responsible for the failure or non-existence of the lighting in question.  Plaintiffs also argue that liability of Cox as the owner does not absolve Brammer from liability.

## II.     LAW AND ANALYSIS

### A.     Summary Judgment Standard

Summary judgment should be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FRCP 56(c).  The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact.  *Stults v. Conoco*, *Inc.*, 76 F.3d 651, 655-56 (5th Cir. 1996).  Summary judgment is also proper if the party opposing the motion fails to establish an essential element of his case.  *See Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  The non-moving party must do more than simply deny the allegations raised by the moving party.  *See Donaghey v. Ocean Drilling & Exploration Co.*, 974 F.2d 646, 649 (5th Cir. 1992).

Rather, the non-movant must come forward with competent evidence, such as affidavits or depositions, to buttress his claims. *Id.*

**B.      Cox's Independent Negligence.**

To establish a negligence claim under general maritime law, the plaintiff must show that the defendant owed the plaintiff a duty of care; that defendant breached that duty; that plaintiff sustained an injury; and that defendant's conduct caused plaintiff's injuries. *In re Cooper/T. Smith*, 929 F.2d 1073, 1077 (5th Cir.1991). Federal regulations governing maritime conduct establish the applicable standard of care if the plaintiff belongs to the class of persons the regulation is designed to protect and the statute intends to protect against the risk of harm that occurred. *See Pennzoil Producing Co., et al. v. Offshore Express, Inc*., 943 F.2d 1465, 1471-72 (5th Cir.1991) (citing *The Pennsylvania*, 86 U.S. (19 Wall.) 125, 136 (1874)). Thus, federal regulations can create statutory duties.

Title 33 of the Code of Federal Regulations is entitled Navigation and Navigable Waters. Parts 66 and 67 of that Title contain regulations pertaining to Private Aids to Navigation and Aids to Navigation on Artificial Islands and Fixed Structures. The parties do not dispute that these regulations are applicable to the wellhead at issue.

33 CFR § 67.01.5 defines a "structure" to include "all fixed structures, temporary or permanent, for which a Corps of Engineers' permit is issued" and includes, *inter alia,* "all structures erected in waters." No party disputes that the wellhead at issue meets this definition of structure.

33 CFR § 67.05-1 provides that the structure have an obstruction light and that such light be "installed in a manner which will permit at least one of them to be carried in sight of the mariner...until the mariner is within 50 feet of the structure, viability permitting." 33 CFR § 67.05-

10 requires that "all obstruction lights...be powered from a reliable source, including auxiliary power sources as necessary" and "shall display a quick-flash characteristic of ...60 flashes per minute." Section 67.01-15 provides that "[o]bstruction lights shall be displayed at all times...commencing at the time the construction of a structure is begun."  33 CFR 67.01-15.

While the aforementioned sections clearly require lighting on structures, they do not designate who is responsible for procuring and maintaining that lighting.  However, Section 67-40.10 provides that the District Commander's communications with the "owners of private aids to navigation...shall be addressed to their usual or last known place of business, or to their local representative, if any."  Further, Section 67-40.15 provides that the District Commander may mark "any structure whenever the owner thereof has failed suitably to mark the same... and the owner shall reimburse the Coast Guard for all costs incurred."  The penalties for violations of Parts 66 and 67 of Title 33 are laid out in Sections 66.01-45 and Section 66.01-1 and provide that no "person, public body or instrumentality... shall establish and maintain, discontinue, change or transfer ownership of any aid to maritime navigation, without first obtaining permission from the Commandant [of the Coast Guard]."  33 CFR § 66.01-1.

Regarding changes of ownership, Section 66.01-5 provides that "[t]o establish and maintain, discontinue, change or transfer ownership of a private aid to navigation" an application must be made to the Commander of the Coast Guard District in which the aid is or will be located.  33 CFR § 66.01-5.  33 CFR 66.01-55 provides that when "any private aid to navigation authorized by the District Commander, or the essential real estate or facility with which the aid is associated is sold or transferred," both parties to the transaction shall submit an application under Section 66.01-5 requesting authority to transfer responsibility for maintenance of the aid.  Further, this regulation

5

mandates that the party relinquishing maintenance shall indicate on the application form "both the discontinuance and the change of ownership of the aid sold or transferred" and that the party accepting responsibility for maintenance of the private aid indicate in the application both the "establishment and the change in ownership of the aid sold or transferred."  33 CFR § 66.01-55 (b)-(c ). 67.40-25.

These regulations requiring lighting of structures were enacted to prevent allisions with oilfield platforms.  *Giorgio v. Alliance Operating Company*, 2005-0002 (La. 2006); 921 So. 2d 58, 70- 71.  Morever, they were designed to protect mariners like Rickey Serigne from striking a structure like a wellhead and as such, Rickey Serigine is within the class of persons the rule was intended to protect.  *Giorgio*, 921 So. 2d at 70- 71.  Further, Courts have routinely held that Sections 66 and 67 create a statutory duty to install lights, reflective matter, and maintain private aids to navigation on the owner.  *Giorgio,* 921 So. 2d at 69-70; *Gele v. Chevron Oil Company*, 574 F. 2d 243 (5th Cir. 1978); *Chevron Oil Company v. the M/V New Yorker*, 297 F. Supp. 412, 416 (E.D.La. 1969)(Mitchell, J); *In the Matter of Texaco, Inc.* , 570 F. Supp 1272, 1283 (E.D. La. 1983)(Beer,J)

In *Giorgio,* a fishing boat crashed into a set of pilings adjacent to a large, unlit oilfield production platform off Breton Sound.  *Giorgio*, 921 So. 2d at 63.  The parties involved filed suit against several defendants who had at one time owned, operated or were otherwise responsible for the abandoned drilling structure.  *Giorgio*, 921 So. 2d at 64.  At the time of the accident, the site was not under lease.[2]  The State of Louisiana appealed a judgment rendering it 100% liable for the

---

[2]The site of the accident was at a structure put on a State lease granted to Gulf Oil Corporation in 1979.  In conjunction with the lease, Gulf Oil received a permit from the United States Army Corps of Engineers and the Louisiana State Department of Conservation to drill three wells and erect a production platform.  *Giorgio*, 921 So. 2d at 64.  After many years, production ceased and by agreement with the successor of Gulf Oil, the State Mineral Board considered the lease expired by its terms and authorized release on December 8, 1993.  The State declared the lease orphaned in January 1995 and the oil company released, relinquished, surrendered and forever quitclaimed to

damages. The Louisiana Supreme Court agreed with the State that it was not liable. The court found that 33 CFR § 67.40-15 provides that the obligation to light the structure and to maintain the obstruction lights fall to the owner. *Giorgio*, 921 o. 2d at 70. The court pointed out that "ownership" is not defined in the regulations; however, in reading Section 67 as a whole and in conjunction with Section 66.01, the court found that the "concept of ownership as well as the liability appears to intertwine with the application and permit process potentially rendering the permittee party the liable party." *Giorgio,* 921 So. 2d at 70. The facts showed that Gulf Oil applied for two permits to "construct, maintain, operate and remove structures and appurtenances required for oil and gas or other mineral exploration, production, ...and operations in the Gulf of Mexico" and that these permits specifically provided for the installation and maintenance of lights and signals at the expense of the permittee. *Giorgio,* 921 So. 2d at 70. Without evidence of a "transfer of the permit and the ownership of private aids to navigation, i.e. the structure operating with the required obstruction lights as required under the permit and 33 CFR § 66.01-55 []" the court found that Gulf Oil and its successor in interest, rather than the State,[3] were obligated to light the structure and to maintain the obstruction lights on the structure as a private aid to navigation.

There has been no evidence submitted to this Court relating to permits applicable to the wellhead at issue in this case. Cox has not presented the permits it was transferred upon taking over its supposed ownership and operations of the wellhead (if any) nor has it provided any evidence that the pertinent permits were transferred to the responsibility of Brammer in accordance with the

---

the State Mineral Board any and all right, title, and interest whatsoever to the State of Louisiana. *Giorgio*, 921 So. 2d at 64.

[3]Without citing any authority, the court noted that they found no specific duty under federal law requiring the State to light the structure.

federal regulations.   Further, Cox has presented no evidence to this Court that it transferred ownership of the wellhead to Brammer.   The court is simply without sufficient information at this time to determine which party is responsible and summary judgment is denied.

Cox's reply argues it delegated whatever statutory duties it may have owed, to its independent contractor under the COA and that the regulations are not strictly personal as they do not foreclose such the possibility of transfer by contract.   Cox cites no authority to support this argument.   The case law demonstrates that generally statutory duties cannot be delegated and thereby absolve, completely, an owner from liability.   See *Humble Oil & Refining Co. v. Tug Crochet*, 422 F. 2d 602, 607-608  (5th Cir. 1970)(finding that owner of wrecked, sunken barge was at fault for failing to provide adequate mooring lines, lights and watchmen and owner's argument that it had no liability because it delegated those duties to a third-party was rejected as its duty was non-delegable when there was evidence showing the owner's subsidiary knew of dangerous conditions); *Tidewater Marine, Inc. v. Sanco International, Inc, et al*., 113 F. Supp. 2d 987 (E.D. La. 2000) (finding that owner's duty under the Wreck Act is continuous, that the duties to mark and maintain the mark are non-delegable, non-imputable duties which cannot be assigned or assumed by any third-party to the absolution of the owner from liability and that while a third-party may be held liable for maintenance of a submerged object, any such liability does not absolve the owner under the Wreck Act); *In the Matter of Texaco, Inc*. , 570 F. Supp 1272, 1283 (E.D. La. 1983)(finding that Chevron had a general statutory duty to provide the structure with proper lights, and that even though it attempted to fulfill this duty by contractually delegating this responsibility to a third-party during construction and by requesting an inspection of the aids, those actions failed to exonerate Chevron entirely from responsibility).

8

Under the holdings of these cases, Cox's position that it should be absolved of any liability because it delegated all responsibility to its independent contractor for lighting is rejected and summary judgment is denied.[4]

**C.     Vicarious Liability**

Under Louisiana law, a principal generally is not liable for the offenses an independent contractor commits in the course of performing its contractual duties. *Hawkins v. Evans Cooperage Co., Inc.*, 766 F.2d 904 (5th Cir.1985); *Robideaux v. Hebert*, 118 La. 1089, 43 So. 887 (1907). This rule is subject to two exceptions. Under the first exception, a principal may not avoid liability for injuries resulting from an ultrahazardous activity by hiring out the work to an independent contractor. *See Hawkins, supra; O'Neal v. Int'l Paper Co.*, 715 F.2d 199 (5th Cir.1983); *Ewell v. Petro Processors, Inc.*, 364 So.2d 604 (La.App. 1st Cir.1978), writ refused, 366 So.2d 575 (La.1979). Activities included within the "ultrahazardous" category include pile driving, storage of toxic gas, blasting with explosives, and crop dusting. The second exception imposes liability upon a principal for the negligent acts of an independent contractor when the principal retains or exercises operational control. *See Hawkins, supra*; *Wallace v. Oceaneering Int'l*, 727 F.2d 427 (5th Cir.1984); *McCormack v. Noble Drilling Corp.*, 608 F.2d 169 (5th Cir.1979).

In support of its argument, Cox relies solely on the COA. In particular, Cox relies upon paragraph 3 of the agreement stating that Brammer "shall act ... at all times as an independent contractor" and paragraph 5 which provides that Brammer "shall use its best efforts to consult with

---

[4]The Court in no way suggests that either Brammer or Cox hold the ultimate responsibility for this loss and in fact, the cases relied upon found negligence on the part of owners as well as those responsible for maintenance. The Court simply rejects Cox's argument that because its contract supposedly delegated any lighting duty to its independent contract that it, per se, cannot be held liable. The cases clearly do not provide that this is the rule in allision cases such as this.

and keep Cox fully informed on a regular basis about all of the operations ...so that Cox...may accept or reject Brammer's recommendations or make a final determination."  The COA gives Brammer the "right and authority to make decisions on behalf of Cox which, according to custom of the industry (in circumstances that involve expenditures that do not exceed $20,000) or because of emergency conditions, require a decision to be made within a brief period of time or which involve the methods and procedures to be employed by Brammer in operations such as, but not limited to, completions, deepening, sidetracking, reworking, or plugging abandoning and the like."  See paragraph 5 of the COA attached as Exhibit "1" to Rec. Doc. 19.

Other that citing to these two provisions, Cox provides no evidence in support of its motion and states that the "plain language of the contract shows that Cox Operating did not maintain control over the day to day operations of Brammer."

Although the contract indicates that Brammer was to operate as an independent contractor, it also states that Brammer shall use its best efforts to keep Cox informed on a regular basis about all operations and conduct under the agreement so that Cox can make informed decisions on what to do. See paragraph 5 of COA at p. 5.  Further, the agreement provides that Brammer's decisions can be made without Cox when there is an emergency, less than $20,000 at stake and when certain operations are undertaken.  Control depends in great measure upon whether and to what degree the right to control the work has been contractually reserved by the principal.  The supervision and control which is actually exercised by the principal is less significant.  *Hemphill v. State Farm Insurance Co.*, 472 So.2d 320, 322 (La.App. 3d Cir.1985).  The contract provisions cited to by Cox do not unequivocally provided that it retained zero control as it suggests.

In the *Coulter v. Texaco, Inc*., 117 F. 3d 909, 911-912, (5th  Cir. 1997) case cited by Cox,

the language in the contract at issue indicated that the independent contractor "shall control and direct the performance of the details of the work" and that the independent contractor "shall be solely responsible for the various moves of its Drilling Unit, for mooring or unloading operations, if required, and for rigging up and rigging down operations." *Coulter,* 117 F. Supp at 912. The language in *Coulter* is much stronger than the language relied upon Cox in its agreement.

Further, in *Ainsworth v. Shell Offshore, Inc*., 829 F. 2d 548, 550-551, (5th Cir. 1987) and *Boutwell v. Chevron U.S.A., Inc*., 864 F. 2d 406, 407-409, (5th Cir. 1989), the courts granted summary judgment relying on not only the contract at issue, but also affidavits and deposition testimony cited in support of the motion for summary judgment.

The contract provisions cited do not demonstrate that Cox was prohibited from retaining all operational control over the wells in Quarantine Bay in all circumstances. In support of its no control argument, Cox has submitted no additional evidence. It is incumbent upon the moving party to inform the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *Stults*, 76 F.3d at 655-56. Cox has failed to meet is burden and summary judgment is denied on this issue.

**D.  Strict Liability**.

Finally, Cox argues it cannot be held liable under LSA-CC arts. 2317, 2317.1, because it did not have custody or garde of the wellhead's navigational lighting.

LSA-CC art. 2317 provides:

> **Art. 2317. Acts of others and of things in custody**
>
> We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody. This, however, is to be understood with the following modifications.

Art. 2317.1 [ a modification of 2317] provides:

> **LSA-CC art. 2317.1 Damage causes by ruin, vice, or defect in things**
>
> The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. Nothing in this Article shall preclude the court from the application of the doctrine of res ipsa loquitur in an appropriate case.

Louisiana courts have found that the term "custody" derives its meaning from the French Concept of garde. See *Russ v. La Coste De Monterville*. 502 So. 2d 1026, 1029 (La. 1987).   An owner who transfers possession, but not ownership, of a thing to another party nonetheless retains custody or garde of the thing for purposes of Article 2317.  *Russ*,  502 So. 2d at 1029-1032.  Thus, the owner of an object containing structural defects continues to have garde of its structure and may be liable for resulting injury even though the owner does not have physical possession of the object at the time it causes injury. *Russ*,  502 So. 2d 1029-1032.  However, an owner who never possesses, controls or operates the thing, never is in a position to correct defects that might have arisen and therefore, is deemed to never have acquired *garde* in the first place. *Pickett v. RTS Helicopter*, 128 F. 3d 925 (5th Cir. 1997); *Ellison v. Conoco, Inc*. 950 F. 2d 1196 (5th Cir. 1992).  Further, garde can be transferred from the owner to another.  See *Jacobs v. Spinnakers*, 474 So. 2d 1019, 1022 (La. App. 5th Cir. 1985).   Determining who has the custody or garde of the thing is a fact driven determination.  *Doughty v. Insured Lloyds Ins. Co.*, 576 So.2d 461, 464 (La.1991).

Cox argues that the COA between it and Brammer designates that Brammer was charged with "providing the goods and services necessary to maintain the wells in Quarantine Bay" and

additionally, that Cox "had no power or authority to control the means, manner or method employed by Brammer and its employees in providing these contracted services." Rec. Doc. 19 at pp. 9-10. Cox argues it never had any "substantial power of usage, direction or control of the navigational light and, therefore, no custody or garde of the light." In support, Cox relies upon the *Ellison* and *Pickett* decisions.

In *Ellison*, the Fifth Circuit affirmed the grant of summary judgment to a defendant who owned defective equipment on the ground that the defendant never acquired garde of the equipment. *Ellison*, 950 F. 2d at 1209. In that case, the injured plaintiff's employer had designed and manufactured the equipment that caused the plaintiff's injury. *Ellison*, 950 F. 2d at 1208. However, due to capitalization problems, the employer had sold the equipment to the defendant, who immediately leased it back to the employer. *Ellison*, 950 F. 2d at 1208. At no time did the equipment physically change hands. *Ellison*, 950 F. 2d at 1208. Under those circumstances, the court held that "[b]ecause [the defendant] never possessed, controlled, or operated [the equipment] (and had no part in its design or manufacture), it follows that [the defendant] was therefore never in a position to correct defects that might have arisen," and thus had not acquired garde. *Ellison*, 950 F. 2d at 1209.

In *Pickett*, the Fifth Circuit affirmed the grant of summary judgment to the owner of a helicopter on the ground that the owner had never acquired garde of the helicopter. 128 F. 3d at 933. The relatives of a pilot killed in a crash argued that the owner of the helicopter was strictly liable under Article 2317 for a defect in the helicopter. *Pickett,* 128 F. 3d at 927. However, the owner did not have possession at the time of the crash, and had purchased the helicopter with the intention of immediately leasing it to the pilot's employer. *Pickett*, 128 F. 3d at 929-30. The owner's

13

only contact with the helicopter had been when its agent accepted delivery of the helicopter at the employer's place of business and signed a delivery receipt to that effect. *Pickett*, 128 F. 3d at 929-30. There was no evidence that the agent had ever inspected the helicopter, and the employer had exclusive control of the helicopter thereafter. *Pickett*, 128 F. 3d at 929-30. In *Pickett*, the court described the concept of garde as follows:

> [I]t is clear that garde attaches to the owner of a thing when he acquires the substantial power of usage, direction, and control of the thing, including the practical ability to discover defects, and remains with him so long as he has that power, regardless of who has the physical possession at any given time.

*Pickett,* 128 F. 3d at 932. Because the helicopter's owner was never in a position to use, direct, or control the helicopter, and because the limited contact the owner had with the helicopter did not put the owner in a position to discover defects, the Fifth Circuit affirmed the district court's grant of summary judgment to the owner. *Pickett,* 128 F. 3d at 933.

In relying on the *Ellison* and *Pickett* cases, it is Cox's position that it never retained physical possession of the wellhead and therefore, never possessed garde of the wellhead. On this record, the Court cannot make that determination. The date that Cox retained the well is unknown and other facts are missing regarding whether or not Cox acquired the power of usage, direction and control. Cox simply cites to its agreement and makes conclusive statements without any evidentiary support to backup its argument that it never obtained garde even though it consistently refers to itself as the owner in its memorandum.[5] Accordingly, a genuine issue of material fact exists regarding whether Cox was conferred garde of the wellhead and summary judgment is denied. In light of this finding,

---

[5]The Court points out that Cox does not rely on the line of cases from Louisiana which discuss garde remaining with the owner until such time as it is transferred to another. Rather, it is Cox's position that it never retained garde and on this record, the Court cannot that determination

discussion of Cox's remaining arguments for summary judgment relative to this issue is pretermitted.

For the reasons stated herein,

**IT IS ORDERED** that Cox Operating, LLC's Motion for Summary Judgment, (Rec. Doc. 19) is **denied.**

New Orleans, Louisiana 26th day of August, 2008.

_____

**UNITED STATES DISTRICT JUDGE**
**STANWOOD R. DUVAL**